NMA:ALC
F. #2014R00055

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

VINCENT ASARO,
JEROME ASARO,
JACK BONVENTRE,
THOMAS DI FIORE,
    also known as "Tommy D," and
JOHN RAGANO,
    also known as "Bazoo,"

               Defendants.

- - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 14 CR 26 (S-1) (ARR)
(T. 18, U.S.C., §§ 894(a)(1), 981(a)(1)(C),
1962(d), 1963, 1963(a), 1963(m), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

    At all times relevant to this Indictment, unless otherwise indicated:

<u>The Enterprise</u>

    1.    The members and associates of the Bonanno organized crime family of

La Cosa Nostra constituted an "enterprise," as defined in Title 18, United States Code, Section

1961(4), that is, a group of individuals associated in fact (hereinafter the "Bonanno crime

family" and the "enterprise").   The enterprise constituted an ongoing organization whose

members functioned as a continuing unit for a common purpose of achieving the objectives of

the enterprise.   The Bonanno crime family engaged in, and its activities affected, interstate

and foreign commerce.   The Bonanno crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2.     La Cosa Nostra operated through organized crime families.   Five of these crime families – the Bonanno, Colombo, Gambino, Genovese and Lucchese crime families – were headquartered in New York City, and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries.   Another crime family, the DeCavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3.     The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families.   The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4.     The Bonanno crime family had a hierarchy and structure.   The head of the Bonanno crime family was known as the "boss."   The Bonanno crime family boss was assisted by an "underboss" and a counselor known as a "consigliere."   Together, the boss, underboss and consigliere were the crime family's "administration."   With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups.   The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family.   In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Bonanno crime family served in an "acting" rather than "official" capacity in

the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny.   Further, on occasion, the Bonanno crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5.      Below the administration of the Bonanno crime family were numerous "crews," also known as "regimes" and "decinas."   Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina."   Each captain's crew consisted of "soldiers" and "associates."   The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection.   In return, the captain often received a share of the crew's earnings.

6.      Only members of the Bonanno crime family could serve as a boss, underboss, consigliere, captain or soldier.   Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button."   Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7.      Many requirements existed before an associate could become a member of the Bonanno crime family.   The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family.   An associate was also required to be proposed for membership by an existing crime family member.   When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa

Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

### Methods and Means of the Enterprise

8. The principal purpose of the Bonanno crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Bonanno crime family through various criminal activities, including robbery, extortion, illegal gambling and loansharking. The members and associates of the Bonanno crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Bonanno crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder, extortion, robbery and assault.

10.     The members and associates of the Bonanno crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds or evidence of those activities.   That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.     Members and associates of the Bonanno crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendants

12.     At various times, the defendant VINCENT ASARO was a member of the administration, a captain, soldier and associate within the Bonanno crime family.

13.     At various times, the defendant JEROME ASARO was a captain, soldier and associate within the Bonanno crime family.

14.     At various times, the defendant JACK BONVENTRE was an acting captain, soldier and associate within the Bonanno crime family.

15.     At various times, the defendant THOMAS DI FIORE, also known as "Tommy D," was a member of the administration, a captain, soldier and associate within the Bonanno crime family.

16.     At various times, the defendant JOHN RAGANO, also known as "Bazoo," was a soldier and associate within the Bonanno crime family.

## COUNT ONE
(Racketeering Conspiracy)

17.     The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

18.     On or about and between January 1, 1968 and June 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO, JEROME ASARO and JACK BONVENTRE, together with others, being persons employed by and associated with the Bonanno crime family, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below. Each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the enterprise.

## RACKETEERING ACT ONE
(Extortionate Extension of Credit Conspiracy/Extortionate Extension of Credit
Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit)

19.     The defendant VINCENT ASARO agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

A.      Extortionate Extension of Credit Conspiracy

20.     On or about and between January 1, 1968 and December 31, 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere,

the defendant VINCENT ASARO, together with others, did knowingly and intentionally

conspire to make one or more extortionate extensions of credit, in violation of Title 18, United

States Code, Section 892(a).

> B.    Extortionate Extension of Credit

21.    On or about and between January 1, 1968 and December 31, 1990, both

dates being approximate and inclusive, within the Eastern District of New York and elsewhere,

the defendant VINCENT ASARO, together with others, did knowingly and intentionally make

one or more extortionate extensions of credit, in violation of Title 18, United States Code,

Section 892(a).

> C.    Extortionate Collection of Credit Conspiracy

22.    On or about and between January 1, 1968 and December 31, 1990, both

dates being approximate and inclusive, within the Eastern District of New York and elsewhere,

the defendant VINCENT ASARO, together with others, did knowingly and intentionally

conspire to participate in the use of extortionate means to collect and attempt to collect one or

more extensions of credit, in violation of Title 18, United States Code, Section 894(a)(1).

> D.    Extortionate Collection of Credit

23.    On or about and between January 1, 1968 and December 31, 1990, both

dates being approximate and inclusive, within the Eastern District of New York and elsewhere,

the defendant VINCENT ASARO, together with others, did knowingly and intentionally

participate in the use of extortionate means to collect and attempt to collect one or more

extensions of credit, in violation of Title 18, United States Code, Section 894(a)(1).

E.    State Law Extortion Conspiracy

24.    On or about and between January 1, 1968 and December 31, 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: United States currency, by compelling and inducing one or more persons to deliver such property by instilling in them a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

F.    State Law Extortion

25.    On or about and between January 1, 1968 and December 31, 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, by compelling and inducing one or more persons to deliver such property by instilling in them a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT TWO
(Murder Conspiracy/Murder/Accessory After the Fact to Murder – Paul Katz)

26.    The defendants named below agreed to the commission of the following

acts, any one of which alone constitutes Racketeering Act Two:

    A.    <u>Murder Conspiracy</u>

       27.    On or about and between December 1, 1969 and December 7, 1969, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally conspire to cause the death of another person, to wit: Paul Katz, in violation of New York Penal Law Sections 125.25(1) and 105.15.

    B.    <u>Murder</u>

       28.    On or about and between December 1, 1969 and December 7, 1969, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, with intent to cause the death of Paul Katz, did knowingly and intentionally cause his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

    C.    <u>Accessory After the Fact to Murder</u>

       29.    On or about and between January 1984 and December 1986, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO and JEROME ASARO, together with others, knowing that a murder, contrary to New York Penal Law Sections 125.25(1) and 20.00, had been committed, did knowingly and intentionally assist the offender or offenders in order to hinder and prevent the offender's or offenders' prosecution, in violation of New York Penal Law Sections 205.50 and 205.65.

## RACKETEERING ACT THREE
(Hobbs Act Robbery Conspiracy/Hobbs Act Robbery/Robbery Conspiracy/Robbery –
Lufthansa Airlines)

30.    The defendant VINCENT ASARO agreed to the commission of the

following acts, any one of which alone constitutes Racketeering Act Three:

A.    Hobbs Act Robbery Conspiracy

31.    On or about and between November 1, 1978 and September 1, 1979,

both dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and

intentionally conspire to obstruct, delay and affect commerce, and the movement of articles

and commodities in commerce, by robbery, to wit: the robbery of approximately $5 million in

United States currency and a quantity of jewelry having a value of approximately $1 million

from one or more employees of Lufthansa Airlines, in violation of Title 18, United States

Code, Section 1951(a).

B.    Hobbs Act Robbery

32.    On or about December 11, 1978, within the Eastern District of New

York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly

and intentionally obstruct, delay and affect commerce, and the movement of articles and

commodities in commerce, by robbery, to wit: the robbery of approximately $5 million in

United States currency and a quantity of jewelry having a value of approximately $1 million

from one or more employees of Lufthansa Airlines, in violation of Title 18, United States

Code, Sections 1951(a) and 2.

C.    State Law Robbery Conspiracy

33.    On or about and between November 1, 1978 and September 1, 1979, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally conspire to steal property by robbery, in that the defendant and others agreed to forcibly steal property, to wit: United States currency and jewelry, from one or more employees of Lufthansa Airlines, while, in the course of the commission of the crime and during immediate flight therefrom, one or more participants in the crime were (1) to be armed with a deadly weapon and (2) to display what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 105.10.

D.    State Law Robbery

34.    On or about December 11, 1978, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally steal property by robbery, in that the defendant and others forcibly stole property, to wit: United States currency and jewelry, from one or more employees of Lufthansa Airlines, while, in the course of the commission of the crime and during immediate flight therefrom, one or more participants in the crime were (1) armed with a deadly weapon and (2) displayed what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 20.00.

## RACKETEERING ACT FOUR
(Arson Conspiracy/Arson)

35.     The defendants named below agreed to the commission of the following

acts, any one of which alone constitutes Racketeering Act Four:

A.     Arson Conspiracy

36.     In or about and between January 1980 and January 1981, both dates

being approximate and inclusive, the defendants VINCENT ASARO and JEROME ASARO,

together with others, did knowingly and intentionally conspire to damage a building, to wit:

8601 Rockaway Boulevard in Ozone Park, New York, by starting a fire, in violation of New

York Penal Law Sections 150.10 and 105.10.

B.     Arson

37.     In or about and between January 1980 and January 1981, both dates

being approximate and inclusive, the defendants VINCENT ASARO and JEROME ASARO,

together with others, did knowingly and intentionally damage a building, to wit: 8601

Rockaway Boulevard in Ozone Park, New York, by starting a fire, in violation of New York

Penal Law Sections 150.10 and 20.00.

### RACKETEERING ACT FIVE
(Murder Solicitation – John Doe #1)

38.     The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Five:

A.     Murder Solicitation

39.     On or about and between January 1, 1983 and December 31, 1985, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JEROME ASARO did knowingly and intentionally solicit, request, importune and otherwise attempt to cause another person to cause the death of John Doe #1, an individual whose identity is known to the Grand Jury, in violation of New York Penal Law Sections 125.25(1), 100.10 and 20.00.

B.     Murder Solicitation

40.     On or about and between January 1, 1983 and December 31, 1985, both dates being approximate and inclusive, within the Eastern District of New York, the defendant VINCENT ASARO did knowingly and intentionally solicit, request, importune and otherwise attempt to cause another person to cause the death of John Doe #1, in violation of New York Penal Law Sections 125.25(1), 100.10 and 20.00.

### RACKETEERING ACT SIX
(Robbery Conspiracy/Attempted Robbery – Armored Car)

41.     The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Six:

14

A.    State Law Robbery Conspiracy

42.    In or about and between January 1984 and December 1986, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO and JEROME ASARO, together with others, did knowingly and intentionally conspire to steal property by robbery, in that the defendants and others agreed to forcibly steal property, to wit: approximately $1 million in United States currency, from one or more employees of an armored car business, while, in the course of the commission of the crime and of immediate flight therefrom, one or more participants in the crime were (1) to be armed with a deadly weapon and (2) to display what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 105.10.

B.    State Law Attempted Robbery

43.    In or about and between January 1984 and December 1986, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO and JEROME ASARO, together with others, did knowingly and intentionally attempt to steal property by robbery, in that the defendants and others attempted to forcibly steal property, to wit: approximately $1 million in United States currency, from one or more employees of an armored car business, while, in the course of the commission of the crime and of immediate flight therefrom, one or more participants in the crime were (1) armed with a deadly weapon and (2) displayed what appeared to be a firearm, in violation of New York Penal Law Sections 160.15, 110.00 and 20.00.

### RACKETEERING ACT SEVEN
(Hobbs Act Robbery Conspiracy/Hobbs Act Robbery/State Law Robbery Conspiracy/State Law Robbery – Federal Express)

44.     The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Seven:

A.     Hobbs Act Robbery Conspiracy

45.     On or about and between February 1, 1984 and February 27, 1984, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO and JEROME ASARO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of gold salts worth approximately $1.25 million from an employee of Federal Express, in violation of Title 18, United States Code, Section 1951(a).

B.     Hobbs Act Robbery

46.     On or about and between February 1, 1984 and February 27, 1984, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of gold salts worth approximately $1.25 million from an employee of Federal Express, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.      State Law Robbery Conspiracy

47.     On or about and between February 1, 1984 and February 27, 1984, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO and JEROME ASARO, together with others, did knowingly and intentionally conspire to steal property by robbery, in that the defendants and others agreed to forcibly steal property, to wit: gold salts, from an employee of Federal Express, while, in the course of the commission of the crime and of immediate flight therefrom, one or more participants in the crime were (1) to be armed with a deadly weapon and (2) to display what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 105.10.

D.      State Law Robbery

48.     On or about and between February 1, 1984 and February 27, 1984, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally steal property by robbery, in that the defendant and others forcibly stole property, to wit: gold salts, from an employee of Federal Express, while, in the course of the commission of the crime and of immediate flight therefrom, one or more participants in the crime were (1) armed with a deadly weapon and (2) displayed what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 20.00.

## RACKETEERING ACT EIGHT
(Hobbs Act Extortion Conspiracy/Hobbs Act Extortion/Extortion Conspiracy– John Doe #2)

49. The defendant VINCENT ASARO agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Eight:

A. <u>Hobbs Act Extortion Conspiracy</u>

50. On or about and between January 1, 1985 and January 1, 1989, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: proceeds from the sale of a pornography business and related properties, from John Doe #2, an individual whose identity is known to the Grand Jury, with his consent, which consent was to be induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B. <u>Hobbs Act Extortion</u>

51. On or about and between January 1, 1985 and January 1, 1989, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: proceeds from the sale of a pornography business and related properties, from John Doe #2, with his

consent, which consent was to be induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

      C.      <u>State Law Extortion Conspiracy</u>

      52.     On or about and between January 1, 1985 and January 1, 1989, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: United States currency, by compelling and inducing John Doe #2 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

RACKETEERING ACT NINE
(Illegal Gambling – Bookmaking)

     53.     In or about and between April 1994 and December 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess

of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18,

United States Code, Sections 1955(a) and 2.

RACKETEERING ACT TEN
(Extortion Conspiracy/Extortion – John Doe #3)

54.     The defendant VINCENT ASARO agreed to the commission of the

following acts, any one of which alone constitutes Racketeering Act Ten:

A.     State Law Extortion Conspiracy

55.     In or about and between January 2006 and December 2006, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT ASARO, together with others, did knowingly and intentionally conspire

to steal property by extortion, in that the defendant and others agreed to obtain property, to wit:

United States currency, by compelling and inducing John Doe #3, an individual whose identity

is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the

property were not so delivered, one or more persons would (1) cause physical injury to one or

more persons in the future and (2) cause damage to property, in violation of New York Penal

Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B.     State Law Extortion

56.     In or about and between January 2006 and December 2006, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant VINCENT ASARO, together with others, did knowingly and intentionally steal

property by extortion, in that the defendant and others obtained property, to wit: United States

currency, by compelling and inducing John Doe #3 to deliver such property by instilling in him

a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

### RACKETEERING ACT ELEVEN
### (Illegal Gambling – Bookmaking)

57.    On or about and between September 1, 2007 and March 1, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO and JACK BONVENTRE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

### RACKETEERING ACT TWELVE
### (Extortion – John Doe #4)

58.    On or about and between October 1, 2010 and November 4, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT ASARO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: United States currency, by compelling and inducing John Doe #4, an individual whose identity is known to

the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not

so delivered, one or more persons would (1) cause physical injury to one or more persons in the

future and (2) cause damage to property, in violation of New York Penal Law Sections

155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT THIRTEEN
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit – John Doe #5)

59.     The defendants named below agreed to the commission of the following

acts, any one of which alone constitutes Racketeering Act Thirteen:

A.      Extortionate Collection of Credit Conspiracy

60.     On or about and between March 1, 2013 and June 30, 2013, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants VINCENT ASARO, JEROME ASARO and JACK BONVENTRE, together with

others, did knowingly and intentionally conspire to participate in the use of extortionate means

to collect and attempt to collect one or more extensions of credit from one or more individuals,

to wit: John Doe #5, an individual whose identity is known to the Grand Jury, in violation of

Title 18, United States Code, Section 894(a)(1).

B.      Extortionate Collection of Credit

61.     On or about and between March 1, 2013 and June 30, 2013, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants VINCENT ASARO, JEROME ASARO and JACK BONVENTRE, together with

others, did knowingly and intentionally participate in the use of extortionate means to collect

and attempt to collect one or more extensions of credit from one or more individuals, to wit: John Doe #5, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

   C. <u>State Law Extortion Conspiracy</u>

   62. On or about and between March 1, 2013 and June 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO, JEROME ASARO and JACK BONVENTRE, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: United States currency, by compelling and inducing John Doe #5 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

   D. <u>State Law Extortion</u>

   63. On or about and between March 1, 2013 and June 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO, JEROME ASARO and JACK BONVENTRE, together with others, did knowingly and intentionally steal property by extortion, in that the defendants and others obtained property, to wit: United States currency, by compelling and inducing John Doe #5 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and

(2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT TWO
(Extortionate Collection of Credit Conspiracy – John Doe #5)

64.     The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

65.     On or about and between March 1, 2013 and June 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO, JEROME ASARO, JACK BONVENTRE, THOMAS DI FIORE, also known as "Tommy D," and JOHN RAGANO, also known as "Bazoo," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from one or more individuals, to wit: John Doe #5.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

COUNT THREE
(Extortionate Collection of Credit – John Doe #5)

66.     The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

67.     On or about and between March 1, 2013 and June 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO, JEROME ASARO, JACK BONVENTRE, THOMAS DI FIORE, also known as "Tommy D," and JOHN RAGANO, also known as "Bazoo," together

with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from one or more individuals, to wit: John Doe #5.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT FOUR
(Collection of Unlawful Debt Conspiracy)

68.   The allegations contained in paragraphs 1 through 17 are realleged and incorporated as if fully set forth in this paragraph.

69.   On or about and between March 1, 2013 and June 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO, JEROME ASARO, JACK BONVENTRE, THOMAS DI FIORE, also known as "Tommy D," and JOHN RAGANO, also known as "Bazoo," together with others, being persons employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through the collection from John Doe #5 of unlawful debt, as that term is defined in Title 18, United States Code, Section 1961(6), to wit: debts that were unenforceable under New York State law, to wit: New York Penal Section 190.40, in whole and in part as to principal and interest because of the law relating to usury and were incurred in connection with

the business of lending money and a thing of value at a rate usurious under New York State law, where the usurious rate was at least twice the enforceable rate.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND FOUR

70.     The United States hereby gives notice to the defendants charged in Counts One and Four that, upon their conviction of either offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires any person convicted of such offenses to forfeit: (a) any interest acquired or maintained in violation of such offense; (b) any interest in, security of, claims against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted or participated in the conduct of, in violation of such offense; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of such offenses.

71.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

CRIMINAL FORFEITURE ALLEGATION AS TO
COUNTS TWO AND THREE

72.    The United States hereby gives notice to the defendants charged in Counts Two and Three that, upon their conviction of either offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds traceable to such offenses.

73.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

27

seek forfeiture of any other property of such defendants up to the value of the forfeitable property.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

A TRUE BILL

_Andrew Mac Millan-Purham_
FOREPERSON

_Loretta E. Lynch_
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2014R00055

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT
## EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*VINCENT ASARO, JEROME ASARO, JACK BONVENTRE, THOMAS DI FIORE, also known as "Tommy D," and JOHN RAGANO, also known as "Bazoo,"*

Defendants.

## SUPERSEDING INDICTMENT

( T. 18, U.S.C., §§ 894(a)(1), 981(a)(1)(C), 1962(d), 1963, 1963(a), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

*AUSAs Nicole M. Argentieri and Alicyn Cooley, (718) 254-6232/6389*