

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:NMA/ALC
F. #2014R00055

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 27, 2015

By ECF

The Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Vincent Asaro
                   Criminal Docket No. 14-26 (S-4) (ARR)

Dear Judge Ross:

      The government respectfully submits this letter to notify the Court of a potential attorney conflict of interest that has come to the government's attention in the above-captioned case.

I.      Introduction

      Defense counsel recently notified the government that she intended to add Diane Ferrone, Esq. to the defense team. Ms. Ferrone has represented codefendant Jack Bonventre ("Bonventre") in the instant case. Bonventre was sentenced on April 15, 2015.

      As set forth below, these circumstances present a potential conflict of interest. While it does not appear that the conflict requires disqualification of counsel, the government advises the Court of these circumstances in accordance with Rule 44(c) of the Federal Rules of Criminal Procedure and pursuant to its obligation under Second Circuit precedent so that the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

II.   Applicable Law

   A.   Overview

   The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

   To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exits "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted). If the attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995).

   Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right to the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163). Both the Supreme Court and the Second Circuit have upheld a trial court's decision not to allow a waiver of a conflict of interest. Wheat, 486 U.S. at 160, 163-64; United States v. Rogers, 9 F.3d 1025, 1030-32 (2d Cir. 1993); Locascio, 6 F.3d at 931-35 (2d Cir. 1993).

B.       Joint Representation

"Rule 44(c) establishes a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." United States v. Aiello, 814 F.2d 109, 112-13 (2d Cir. 1987) (quoting Fed. R. Crim. P. 44 advisory committee notes (1979 amendment)).

Under Rule 44(c)(1), joint representation occurs when "two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13" and "the defendants are represented by the same counsel, or counsel who are associated in law practice." When this occurs, "[t]he court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Fed. R. Crim. P. 44(c)(2); see also United States v. Gambino, No. 96-1269, 1997 WL 32807, at *1 (2d Cir. Jan. 9, 1997) (Rule 44(c) requires "a district court to inquire into the possibility of conflict of interest when co-defendants are represented by the same counsel") (citing Levy, 25 F.3d at 153 n.6).

"To fulfill this so-called 'inquiry' obligation, the court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from any conflict." Gambino, 1997 WL 32807, at *1 (citing Levy, 25 F.3d at 153). In so doing, the court is generally entitled to rely on the representations of defense counsel that no conflict exists, even if those representations later turn out to be incorrect. See id. (citing Levy, 25 F.3d at 154). "Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2).

Rule 44(c) "does not eliminate the defendant's power to waive his right to be represented by a conflict-free attorney." Curcio, 680 F.2d at 887. "Given the constitutional dimension of the defendant's right to counsel of his own choosing, if the defendant makes a knowing and intelligent election to pursue that right in preference to his right to an attorney of undivided loyalty, disqualification would not protect the Sixth Amendment right that the defendant asserts and would not be 'appropriate.'" Id. at 888.

C.       Prior Representation

An attorney's prior representation of a codefendant or a government witness presents an inherent conflict of interest. See Locascio, 6 F.3d at 931; United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to her former client. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274

3

(S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to her by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 (stating that "[t]he obligation to protect confidences and secrets of a client continues after the termination of employment").

Accordingly, a lawyer cannot use privileged information obtained from her former client during prior representation that would adversely affect that client in the present proceeding. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Furthermore, in representing her current client, a lawyer cannot attack her former client through, for example, argument to the jury. See, e.g., Rahman, 861 F. Supp. at 276 (noting, as one potential conflict, that "[i]t may be advisable for a lawyer representing [the current client's] interest to make arguments distancing [him] from one or all of [the codefendants counsel previously represented], or to adduce evidence helpful to [the current client] but harmful to one or all of those [co]defendants, measures which, if taken by the [law firm], would violate that firm's duty to its former clients and, if not taken, would give rise to arguments by [the current client] on appeal that his lawyer's performance had been adversely affected by a conflict of interest and his conviction therefore should be reversed").

D. *Curcio* Waiver

If the conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the district court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; Iorizzo, 786 F.2d at 58-59. In summarizing the Curcio procedures, the Second Circuit has instructed the district court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

The need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v.

4

Keane, 99 F.3d 492, 497 (2d Cir. 1996).  Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage.  See id. (explaining, "'prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.'") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

III.    Discussion

A potential conflict of interest arises from Ms. Ferrone's representation of codefendant Bonventre in the instant case.  In submissions filed on behalf of Bonventre, Ms. Ferrone and co-counsel for Bonventre argued that the defendant – whose statements regarding Bonventre's membership in the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family") and Bonventre's participation in the Bonanno family's criminal activities were captured on several consensual recordings made by a cooperating witness – was not credible.  See, e.g., Def. Bonventre's Mot. to Sever, dated July 28, 2014, ECF Docket Entry No. 109, at 8 ("Indeed, Mr. Bonventre would seek to impeach co-defendant Vincent Asaro concerning the ambiguous taped statement that forms the basis of the one allegation of loansharking activity against Mr. Bonventre, in addition to any other statements admitted by the government spoken by this codefendant about Mr. Bonventre.").

Filings by Ms. Ferrone and her co-counsel further suggested that the defendant was guilty of – and further, even more culpable than Bonventre with respect to – conspiring to collect an unlawful debt from the car wash employee, conduct which forms the basis of pending charges against the defendant (namely, Count One, Racketeering Act 14, and Counts Two and Three).  See, e.g., Sentencing Mem. for Def. Bonventre, dated Mar. 26, 2015, ECF Docket Entry No. 206, at 7 ("[W]hen [Bonventre's] relative, Vincent Asaro, asked for Jack's assistance in getting the loan paid back, [Bonventre] didn't think – he simply did what he always does, which is try to help.  This time his help was meant to avoid any escalation with the debtor."); id. at 9 ("In the spring of 2013, Vincent Asaro, who Mr. Bonventre has known his entire life and to whom he is related by marriage, asked Mr. Bonventre if he would speak to John Doe #1 about an outstanding loan. . . . Knowing that Mr. Bonventre had a longstanding relationship with John Doe #1, Vincent Asaro asked Mr. Bonventre to speak with him and mediate the resolution of the outstanding loan."); id. at 10 ("[Bonventre] was wrongly trying to mediate a dispute for his cousin [the defendant]. This crossed the line and drew him back into the milieu [the Bonanno family's criminal activities] he was trying to leave behind."); id. at 11 n.1 ("Mr. Asaro's wishful musings about elevating his relative [Bonventre to the position of Bonanno family consigliere] are largely his own. They are not undertaken in consultation with Mr. Bonventre."); Ltr. from Counsel for Def. Bonventre, dated Apr. 12, 2015, ECF Docket Entry No. 216, at 5 ("It was only after Mr. Bonventre, at the behest of a relative [the defendant], was asked to intercede with someone Mr. Bonventre

had known for years, that Mr. Bonventre made the terrible mistake that has led to this conviction.").

Due to her representation of Bonventre, Ms. Ferrone may possess privileged information that could be helpful in defending the defendant but that she is ethically precluded from disclosing or using in his defense. See DR 4-101(B) (providing that "[e]xcept when permitted under DR 4-101(C), a lawyer shall not knowingly: (1) Reveal a confidence or secret of a client. (2) Use a confidence or secret of a client to the disadvantage of the client. (3) Use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure."); EC 4-6 (making it clear that "[t]he obligation to protect confidences and secrets of a client continues after the termination of employment."). Ms. Ferrone's representation of Bonventre in the same case in which she would represent the defendant could present a conflict of interest in investigating leads for the defendant, introducing evidence or making arguments on the defendant's behalf that are unfavorable to Bonventre. See DR 5-108(A)(1) (providing that "[e]xcept with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not . . . [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client").

Notwithstanding these limitations, as noted above, a defendant can generally waive potential conflicts arising from his attorney's current or prior representation of a codefendant.[1] See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

---

[1] Because codefendant Jack Bonventre already has been sentenced and has not filed a notice of appeal, it is the government's understanding that Ms. Ferrone's representation of Bonventre for purposes of the instant case has terminated. The government requests that the Court inquire of Ms. Ferrone to confirm that she no longer represents Bonventre in any capacity. To the extent Ms. Ferrone's representation of Bonventre is ongoing, it may be necessary for the Court to conduct the Curcio inquiry described herein with respect to Bonventre as well.

IV.     Proposed Questions

In the event the Court determines that the defendant can waive the potential conflict of interest, the government proposes that the Court advise the defendant as follows:

> I am advised that your attorney currently represents or has previously represented Jack Bonventre. Your attorney has certain ethical obligations to her current or former clients. For example, it might be a conflict of interest for your attorney to investigate leads, introduce evidence or make arguments on your behalf that might tend to incriminate or cast suspicion on her current or former client.
>
> Your attorney also may have privileged information from her current or former client that could assist in your defense but that she could not disclose because of her ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crimes charged against you or your relationship with your codefendants, whereas your attorney may be ethically barred from pursuing such a defense strategy due to contrary information she may have obtained from her current or former client.
>
> There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact that she currently represents or has represented other clients in matters related to this case or the Bonanno organized crime family. No one can foresee every possible conflict of interest.
>
> Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?
>
> You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations. If you proceed with your attorney, you will be giving up that right. Do you understand that?
>
> Have you discussed these issues with your attorney?
>
> You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that

> might arise if you proceed with your attorney. Do you understand that?
>
> You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.

V. Conclusion

For the foregoing reasons, the Court should notify the defendant of the potential conflict raised above and conduct an appropriate inquiry pursuant to Rule 44(c) and Curcio. In addition, the Court should advise the defendant regarding his right to conflict-free representation and determine if he can waive that right.

                                          Respectfully submitted,

                                          LORETTA E. LYNCH
                                          United States Attorney

By:       /s/
            Nicole M. Argentieri
            Alicyn L. Cooley
            Assistant U.S. Attorney
            (718) 254-6232/6389

cc:     Clerk of the Court (ARR) (by ECF)
        Elizabeth Macedonio, Esq. (by ECF and E-mail)