EAG:NMA/ALC/LKG
F. #2014R00055

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                        Docket No. 14-CR-26 (S-4) (ARR)

VINCENT ASARO,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTION IN LIMINE TO
PRECLUDE CERTAIN EVIDENCE AT TRIAL


                                      KELLY T. CURRIE
                                      ACTING UNITED STATES ATTORNEY
                                      Eastern District of New York
                                      271 Cadman Plaza East
                                      Brooklyn, New York 11201


Nicole M. Argentieri
Alicyn L. Cooley
Lindsay K. Gerdes
Assistant U.S. Attorneys
     (Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion <u>in</u> <u>limine</u> to preclude the introduction of evidence regarding (1) the sentences previously imposed on cooperating witnesses and (2) past instances of domestic violence of the cooperating witnesses.

For the reasons set forth herein, the government respectfully submits that the Court should grant the instant motion.[1]

---

[1] The government reserves the right to make additional motions <u>in</u> <u>limine</u> at a later date.

ARGUMENT

I. The Court Should Preclude the Defendant From Introducing Any Evidence About the Sentences Imposed on Cooperating Witnesses

At trial, the government intends to introduce the testimony of cooperating witnesses who are themselves defendants that have pled guilty to their participation in criminal activity pursuant to cooperation agreements with the government. A number of the cooperating witnesses who are expected to testify have been sentenced. As the Court is well aware, sentencing is a judicial determination based upon the totality of the circumstances of an individual defendant's case. Accordingly, as set forth below, any evidence, questioning or argument by the defendant beyond whether or not the cooperating witness received a letter pursuant to U.S. Sentencing Guidelines Section 5K1.1 and 18 U.S.C. § 3553(e) ("5K letter") should be precluded pursuant to Federal Rule of Evidence 403 because introduction of such evidence presents a substantial risk of unfair prejudice, confusion of the issues and undue waste of time, and should be precluded.

 A.  Legal Standard

  1.  Sentencing

Sentencing is an individualized determination made by the court after careful consideration of a number of factors. At the outset, a judge imposing sentence is statutorily obligated to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>> (B) to afford adequate deterrence to criminal conduct;
>
>> (C) to protect the public from further crimes of the defendant; and
>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission] . . .;
>
> (5) any pertinent policy statement [issued by the Sentencing Commission] . . .;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  In addition, the Supreme Court has held that a sentencing court is required to consult the U.S. Sentencing Guidelines.  United States v. Booker, 125 S. Ct. 738, 764-65 (2005).  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so

doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted). Therefore, under the law the sentencing of any particular defendant requires - at the very least - particularized findings related to the defendant's advisory Guidelines calculation, as well as his personal circumstances, criminal history, the nature of the crime, and the kinds of sentences available.

The sentencing of cooperating defendants is even more complex. As an initial matter, the cooperation agreement states that if the defendant provides "substantial assistance," the government will file a 5K letter in order to permit the court in its discretion to depart below any applicable mandatory minimum sentence. The agreement also explicitly states that the government will not recommend to the court a specific sentence to be imposed and does not make any recommendations or promises to the defendant as to what sentence the court should impose. At sentencing, if the government files a 5K letter on behalf of a cooperating defendant, the sentencing court is asked to also factor in, beyond the Section 3553(a) factors and Guidelines calculation described above, the defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense." See U.S.S.G. § 5K1.1. Further, the U.S. Sentencing Guidelines advise that in determining the appropriate reduction in sentence for a defendant, the court may consider, but is not limited to, the following factors:

- The court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

- The truthfulness, completeness and reliability of any information or testimony provided by the defendant;

- The nature and extent of the defendant's assistance;

- Any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

- The timeliness of the defendant's assistance.

Id.  Thus, the sentence of a cooperating defendant is the result of the sentencing court's consideration and weighing of some or all of these variables, in addition to perhaps countless others.

### 2. Rule 403

Federal Rule of Evidence 403 provides that otherwise relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  The Second Circuit has explained that "[t]he prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"  United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)); see also 2 Weinstein's Federal Evidence § 403.04[1][b] at 403-37 (Joseph M. McLaughlin, ed., 2d ed. 2003) ("Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case.").

6

B.      Application

The sentence of a cooperating defendant is therefore a judicial determination based upon a variety of factors, none of which is the government's recommendation of or advocacy for a particular sentence, and is decided solely by the sentencing court in its discretion.  Evidence of this judicial decision should be precluded at trial because the risk of confusion and unfair prejudice substantially outweighs its probative value, if any.  For example, cross-examining a witness about his ultimate sentence in an attempt to impeach the witness's credibility based upon his bias toward the government would be improper and create unfair prejudice as the government did not determine the witness's sentence or even make a recommendation to the court as to what sentence would be appropriate.  Additionally, any attempt to counter such an argument and explain the factors weighed by a court in sentencing a cooperating witness would no doubt confuse the jury because, as described above, it would require a thorough discussion of Section 3553(a) factors and the U.S. Sentencing Guidelines.  Such evidence should therefore be precluded especially when it is so attenuated from the ultimate issue of the witness's credibility and possible bias.  The government respectfully submits that the defense can achieve its aims by cross-examining the witness about the importance of receiving a 5K letter and providing substantial assistance, and whether the cooperating witness in fact received that letter.

Notably, in past cases where the defense has wanted to elicit from cooperating witnesses the sentences they hoped to receive by questioning them about the sentences imposed on previously-sentenced cooperating witnesses, courts have precluded such inquiry

because of the real risk of juror confusion and the limited value of such evidence.[2] As the Honorable Nicholas G. Garaufis has held in another organized crime case involving one of the cooperating witnesses at issue here, Salvatore Vitale, this evidence is prejudicial and likely to create confusion:

> The defendant has moved for the Court to permit cross-examination of cooperating witnesses about the sentences that Salvatore Vitale, Sammy the Bull Grav[a]no, and other cooperating witnesses have received as a result of cooperating with the government, [and] defendant's motion is denied. The Court finds that such questioning about cooperator's impressions of the benefits of other specific cooperators, that other specific cooperators have received, is not essential to effective cross-examination for bias.
>
> The Court further finds that such examination is both prejudicial and likely to create confusion. Any probative value such evidence would have is substantially outweighed by the likelihood of prejudice and confusion and thus is barred under Federal Rule of Evidence 403.
>
> The defendant may inquire into these cooperating witnesses' biases through a broad range of questions about the benefits they expect to receive without inquiring into what benefits specific named cooperating witnesses received. [For] the same reasons, the defense will not be permitted to reference the sentences specific cooperating witnesses have received during their opening statement.

(Transcript of Trial in United States v. Vincent Basciano (attached as Exhibit A) at 4507-08.)

Thereafter, when Salvatore Vitale was called to testify by the defense in Basciano, the sentence Vitale received was not put before the jury. In summations, however,

---

[2] To the extent the defense intends to elicit the sentences of previously-sentenced cooperating witnesses who are not testifying in this trial, the government hereby objects to that evidence for the same reasons.

8

defense counsel suggested that Vitale was not in custody. In an effort to eliminate unfair prejudice to the government, Judge Garaufis instructed the jury as follows:

> Yesterday defense counsel made some statements in summation concerning the current status of Sal Vitale. You should draw no inferences concerning the sentence Mr. Vitale or any cooperating witness may or may not receive except as will be set forth in my instructions on the law. Those sentences are not within the government's control. They are solely within the discretion of the sentencing court.

(Id. at 8223.)

As Judge Garaufis correctly observed, the sentences received by cooperating witnesses are judicial determinations, not benefits conferred on witnesses by the government. (Id. at 4429 (describing comparisons of different cooperating witnesses' sentences as "apples and oranges"); 4428 (observing that placing a cooperator's sentence before the jury "brings into question what the Court did with Sal Vitale").) Revisiting such judicial determinations before a jury presents substantial risks of confusion and prejudice in that, in order to put an individual witness's sentence into context, the government would need to present voluminous information to the jury – the very same information provided to the sentencing court – which would lead to wasting time, causing delay and creating a confusing side-show for the jury, precisely the concerns Rule 403 was designed to address.

Similarly, in United States v. Thomas Gioeli, after defense counsel made a misleading argument in its opening statement about the government recommending a specific sentence for a cooperating witness, the Honorable Brian M. Cogan gave the following limiting instruction:

> Ladies and gentlemen, let me explain to you a little bit about how federal sentencing works, particularly with regard to cooperating witnesses.

9

> When someone cooperates with the government the government does not determine what sentence they are going to get. Nor does the government make a recommendation to the sentencing judge as to how much time they're going to get.
>
> What the government will do, if it is satisfied with the level of cooperation, is write to the sentencing judge what is known as a 5K1 letter. That sets forth the nature of the crimes that the defendant has committed and all the cooperation that the defendant has undertaken. The judge takes that letter, together with a lot of other information about the defendant and all of the crimes that he's committed, and it is the judge exclusively that decides upon the appropriate sentence, not the government.
>
> So all that the cooperating witness gets from the government, if the government is satisfied with their cooperation is this 5K1 letter.
>
> I won't tell you that the 5K1 letters aren't important to sentencing judges, they generally are, but it is the judge's decision and only the judge's decision as to what the sentence should be.

(Transcript of Trial in United States v. Thomas Gioeli ("Gioeli Tr.") (attached as Exhibit B) at 327-328.) Precluding such testimony and the arguments that would naturally follow will safeguard against undue prejudice, confusion of the issues and misleading of the jury as outlined in Rule 403.[3]

II.     The Court Should Preclude Reference to Incidents of Domestic Violence and
        Criminal Contempt by the Cooperating Witnesses

The defendant should also be precluded from cross-examining the government's cooperating witnesses, introducing evidence, or otherwise making arguments

---

[3] Should the Court deny this motion and admit such evidence, the government requests that it be allowed to offer a proposed limiting instruction.

during the defendant's trial regarding collateral instances of domestic violence, both admitted and alleged, and criminal contempt.

More specifically, a cooperating witness ("CW-1") has advised the government that a former girlfriend ("ex-girlfriend") falsely accused him of domestic violence which resulted in the issuance of an order of protection against CW-1. CW-1 said he subsequently violated the order of protection by seeing his ex-girlfriend, who he was living with at the time of the violation. CW-1 further advised that he pleaded guilty to violating the order of protection, commonly referred to as criminal contempt. Additionally, another cooperating witness ("CW-4") has admitted to physical altercations with former domestic partners, one of whom was pregnant at the time, and his former mother-in-law.[4]

### A. Legal Standard

It is well-established that a "trial court has wide discretion to impose limitations on the cross-examination of witnesses." United States v. Flaherty, 295 F.3d 182, 190 (2d Cir. 2002); see also Guttman v. Commodity Futures Trading Commission, 197 F.3d 33, 38 (2d Cir. 1999). In addition to a trial court's inherent powers to limit cross-examination, the Federal Rules of Evidence provide numerous bases for precluding cross-examination that is irrelevant or prejudicial. Rule 608(b) provides that "[s]pecific instances of [the] conduct of a witness" may be inquired into on cross-examination "if probative of truthfulness or untruthfulness." Fed. R. Evid. 608(b). However, "[i]f all that can be said about behaviors is that it might be called improper, immoral, or unlawful . . . asking about it cannot be justified under Fed. R. Evid. 608." United States v. Stone, Cr. No. 05-401 (ILG),

---

[4] The government reserves the right to supplement this motion with respect to other witnesses beyond CW-1 and CW-4.

11

2007 WL 4410054, at *1 (E.D.N.Y. Dec. 14, 2007) (internal quotation marks and citation omitted). Put another way, a witness's prior bad acts "are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness." United States v. Devery, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996), aff'd sub nom. United States v. Torres, 128 F.3d 38 (2d Cir. 1997).

Moreover, even if a witness's prior acts are probative of truthfulness, the court may exclude them under Rule 403 when the potential prejudice substantially outweighs their probative value. Fed. R. Evid. 403; see also United States v. Tillem, 906 F.2d 814, 827 (2d Cir. 1990) (holding cross-examination restriction appropriate both because prior misconduct was not probative of truthfulness and any probative value was outweighed by prejudicial effect).

B.   Application

The Court should preclude reference at trial to instances of domestic violence by the government's cooperating witnesses under Rule 608(b) because it is not probative of the witnesses' truthfulness. See, e.g., United States v. Jeffers, 402 Fed. Appx. 601, 603 (2d Cir. 2010) (summary order) (purported prior acts of domestic violence not probative of witness's credibility); United States v. Gambardella, Cr. No. 10-674 (KBF), 2011 WL 6314198, at *1 n.1 (S.D.N.Y. Dec. 15, 2011) (witness's past domestic abuse is not probative of character for truthfulness). While domestic violence is no doubt deplorable, "the loathsomeness of prior misconduct does not necessarily bear on the perpetrator's capacity for truth-telling." Devery, 935 F. Supp. at 408 (S.D.N.Y. 1996). Indeed, "cross-examination concerning immoral acts . . . may be properly excluded [when] they are not probative of the witness's veracity." Id.

12

Moreover, even if the past incidents of domestic violence were somehow probative of the witnesses' character for truthfulness - which they are not – they should be excluded pursuant to Rule 403 as substantially more prejudicial than probative, especially in cases of false accusations.  See, e.g., Jeffers, 402 Fed. Appx. at 603 (probative value of domestic abuse evidence substantially outweighed by unfair prejudice and the need for a mini-trial on domestic disputes); Gambardella, 2011 WL 6314198, at *2 ("probative value of the admission of [witness's] prior acts of domestic violence . . . would be substantially outweighed by the danger of prejudice before the jury"); Devery, 935 F. Supp. at 408 ("any probative value of . . . cross-examination [of witness regarding alleged abuse of stepdaughter] was substantially outweighed by its prejudicial effect on the jury.").

Similarly, the Court should preclude reference at trial to instances of criminal contempt by the government's cooperating witnesses under Rule 608(b) because it is not probative of the witnesses' truthfulness.  See United States v. Khalil, 2005 U.S. App. LEXIS 25426, at *5-6 (2d. Cir. Nov. 22, 2005) (summary order) (affirming district court's preclusion of defendant from examining witness regarding arrest for violation of protective order even if it resulted in conviction as insufficiently probative of truthfulness); accord United States v. Morales, 474 F. App'x. 30, 33-34 (2d. Cir. 2012) (summary order) ("[T]he probative value of [witness's] disobedience of a protective order in the absence of any evidence of lying [is] minimal and substantially outweighed by the risk of creating a confusing distraction from the central issues at trial."); United States v. Brown, 606 F. Supp. 2d 306, 315-316 (E.D.N.Y. Nov. 22, 2005) (precluding cross-examination of a witness's conviction for criminal contempt for violating order of protection because it is "low on the impeachment value scale").

13

Thus, the government respectfully requests that the defendant be precluded from cross-examining the cooperating witnesses, introducing evidence or otherwise making arguments during the trial concerning instances of domestic violence and criminal contempt committed by these witnesses.

## CONCLUSION

For the reasons set forth above, the government's motion should be granted.

Dated: Brooklyn, New York
      September 16, 2015

                                    Respectfully submitted,

                                    KELLY T. CURRIE
                                  Acting United States Attorney

                   By:      /s/
                                  Nicole M. Argentieri
                                  Alicyn L. Cooley
                                  Lindsay K. Gerdes
                                  Assistant United States Attorneys
                                  (718) 254-6232/6389/6155

cc:     Defense counsel (by ECF)(w/o attachments)