UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                                  14 CR 26 (S-4) (ARR)

VINCENT ASARO,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


DEFENDANT VINCENT ASARO'S MEMORANDUM OF LAW
IN SUPPORT OF HIS THIRD MOTION IN LIMINE TO PRECLUDE
CERTAIN EVIDENCE AT TRIAL


THE LAW OFFICE OF
ELIZABETH E. MACEDONIO
80 Broad Street
Suite 1900
New York, New York 10004
(212) 257-6410

DIANE FERRONE, ESQ.
205 W. 54th Street
New York, New York 10019
(646) 337-9010

Defendant Vincent Asaro respectfully submits this memorandum of law in support of his third motion in limine.  Specifically, Mr. Asaro moves the Court for an order precluding the government from introducing any evidence of murders, attempted murders, or conspiracies to commit murder allegedly related to the Lufthansa Heist, as well as testimony by CW-1 that he "felt endangered" and that he went to a meeting where he was asked to murder Jimmy Burke's son.

## BACKGROUND

When the government filed its Rule 404(b) motion on May 27, 2015, footnote 6 provided:

> As direct evidence of Racketeering Act Three, for the purpose of explaining how the proceeds were divided and the defendant's recorded statements about the Lufthansa Heist, the government intends to adduce limited evidence of the murders of other participants in the Heist that were not committed by the defendant or at his direction.

ECF # 234 at 11 n.6.

At the September 10, 2015, Court conference, defense counsel raised the homicides allegedly relating to the Lufthansa Heist.  The government responded in part, as follows:

> CW-1 will testify that after the Lufthansa heist, a bunch of people who participated in it were murdered, not by the defendant.  Had nothing to do with Mr. Asaro. And it's relevant to him [CW-1] in a very small regard because at some point, his own life was in danger and he was called to a meeting with one of the participants in the heist and he consulted with Mr. Asaro, who was in Florida at the time, and said what should I do?  They're calling me to this meeting. And he gave him advice about how to protect himself.

Exhibit A at 42-43.  The Court then inquired what "[e]xactly is going to be said about the murders?"  Id. at 44.  The government responded:

> So just as an example, Judge, shortly after the Lufthansa heist, they're moving the money.  They're cleaning the money. The

1

> money is being held and they're not supposed to spend it. The defendant is with CW-1 at Robert's Lounge where everyone hung out. Tommy DeSimone comes in who's a critical part of the heist. He's part of the Richard Eaton homicide. And he says, "I'm going to get straightened out tonight. They're going to make me a captain." And the CW goes to say something because that doesn't make sense. No one gets get straighten out and made a captain the same day. And the defendant says, "Be quiet," and then Tommy DeSimone disappears and later, Jimmy Burke says that he was killed. … That's not going to be offered for the truth of the matter that they killed – it's not even clear who killed Tommy. We're not going to elicit that, but the fact that that happened goes to the relationship of trust between them.

Id.

The Court then asked if the testimony could be limited to one homicide. See id. at 45. The government responded "We could talk about that one, Judge, and then I would say also the incident where he felt like his life was also in danger. As background to that, he would say that these other two people were found killed and it was his understanding the guy that he had met with killed them." Id.

Immediately following the September 10, 2015 status conference, the parties spoke and defense counsel asked for a written proffer as to what the government would elicit at trial, so that it could review the proffered evidence further. The government provided a written proffer to the defense on Friday September 25, 2015 ("Gov't Lufthansa Murders Letter"). See Exhibit B. The letter contains information about four murders, an alleged conspiracy to kill two additional people and CW-1 "feel[ing] endangered." Id.

During a telephone conference with the Court on September 25, 2015, defense counsel raised the government's letter and its inclusion of multiple murders. The Court cautioned the government to pare the evidence down to "bare bones."

2

ARGUMENT

Federal Rules of Evidence 401 and 403 play an extremely important gatekeeping function. If evidence is not "of consequence in determining the action" it is simply not relevant. See Fed. R. Evid. 401. The Court may exclude evidence if its probative value is substantially outweighed by "unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. All of the proffered evidence in the Government's September 25, 2015 letter should be precluded under Rules 401 and 403.

As an initial matter, the government sought in its 404(b) motion to admit evidence at the trial related to the murder of Richard Eaton and a conspiracy to murder Russell Mauro. Those applications were granted although there is no evidence that Mr. Asaro actually participated in these murders. Now the government seeks to have an additional four homicides and two murder conspiracies admitted at the trial, despite the fact that Mr. Asaro is not charged with any of these crimes nor is there any evidence that he participated in them. It is the defense position that the admission of this evidence it not only irrelevant, it is also improper propensity evidence. It should be noted that not a single date or time period is provided for any of this evidence the government seeks to introduce at trial.

A. Marty LNU

With regard to Marty LNU,[1] as an initial matter, nothing in the government's proffer demonstrates Marty was actually involved in the Lufthansa Heist or that he was killed for his role in the Lufthansa Heist. The government's proffer simply states that "Marty's guy was supposed to get plans for the layout of the terminal to aid the Heist" and that "Marty had been complaining about the money he had received." Exhibit B at 1. This proffered evidence is

---

[1] Upon information and belief, Marty LNU is Marty Krugman. Krugman and his murder were depicted in great detail in the movie *Goodfellas*.

3

simply not necessary to "explain[ ] how the proceeds were divided and the defendant's recorded statements about the Lufthansa Heist." ECF # 234 at 11 n.6. Moreover, how the proceeds were divided and the murderous aftermath of the Lufthansa Heist are not elements of the charged offense. Further, there is no proffer that Mr. Asaro has any knowledge about Marty or that Marty was killed. Therefore, Marty's subsequent death is utterly irrelevant to the instant case. Any probative value this evidence might have is substantially outweighed by its unfair prejudice, and clear ability to confuse and mislead the jury. Thus, it must be excluded.

    B. Tommy DeSimone

Tommy DeSimone is the individual portrayed by Joe Pesci in the movie *Goodfellas*.

It is indisputable that the government's proffer about DeSimone's murder has *nothing whatsoever* to do with Lufthansa. The government's own proffer suggests DeSimone was killed because of several disputes he had with members of another LCN family. See Exhibit B at 1-2. Accordingly, this alleged evidence does not "explain[ ] how the proceeds were divided and the defendant's recorded statements about the Lufthansa Heist." ECF # 234 at 11 n.6. Any probative value this evidence might have is substantially outweighed by its unfair prejudice and clear ability to confuse and mislead the jury. Therefore, the Court should preclude the introduction of this information at trial.

    C. Robert "Frenchy" McMahon and Joseph "Buddha" Manri

Unlike DeSimone, the government's proffer as to Marni and McMahon alleges that Manri was one of the participants in the Lufthansa Heist and McMahon was killed because Burke suspected he knew about the Lufthansa Heist and was cooperating with law enforcement. See Exhibit B at 2. However, neither allegation makes the murders relevant to the charges against Mr. Asaro. The admission of these additional murders, allegedly committed by Burke

4

will be prejudicial to Mr. Asaro and possibly perceived by the jury as (improper) propensity evidence. Any probative value this evidence might have is substantially outweighed by its unfair prejudice and clear ability to confuse and mislead the jury. Therefore, it should be excluded at trial.

    D. <u>CW-1 feels endangered</u>

The government proffers that "after the Heist and the murder of McMahon and Manri," CW-1 was asked by Anthony Stabile to meet him at his house to discuss an "unspecified subject." Exhibit B at 2. While the government does not specify when this meeting took place, death certificates of McMahon and Manri indicate that they were murdered on May 17, 1979, five months after the Lufthansa Heist. The government acknowledges that Stabile did not participate in the Lufthansa Heist but advances that he was given money by Burke. When CW-1 went to the meeting "Stabile was high on cocaine and was not making sense." <u>Id</u>. Without further explanation, the government advances that Stabile, at Jimmy Burke's request, tried to recruit CW-1 to assist him [Stabile] in murdering Burke's son Frankie Burke. No reason for the murder is stated by the government.

It is inconceivable how this helps "explain[ ] how the proceeds were divided and the defendant's recorded statements about the Lufthansa Heist." ECF # 234 at 11 n.6. Nothing in the government's proffer, except for the vague statement that this meeting occurred "after" the Heist and murders of McMahon and Manri" suggests that CW-1 was summoned to Stabile's house for his alleged role in the Lufthansa Heist. Moreover, given Stabiles' mental and physical state it is impossible to derive any evidentiary value from the meeting. Therefore, any probative value this evidence might have is substantially outweighed by unfair prejudice, and its clear ability to confuse and mislead the jury. Thus, it should be excluded.

5

E.  Louis "Fat Louie" Carfora

Finally, the government seeks to elicit testimony from CW-1 that after he was summonsed to Stabile's house, Stabile told Mr. Asaro and CW-1 that Burke wanted CW-1 and Stabile to kill Cafora, who had participated in the Heist and was talking to much about it.  See Exhibit B at 2.  According to the government's proffer, ultimately Mr. Asaro told Stabile that CW-1 would not participate in the murder of Carfora.  See id. at 3.  The defense submits that this information is simply irrelevant to charges against Mr. Asaro.  Moreover, the admission of yet another alleged murder Mr. Asaro did not commit is extremely prejudicial and improper propensity evidence.  Any probative value this evidence might have is substantially outweighed by unfair prejudice, and its clear ability to confuse and mislead the jury therefore it should be excluded.

## CONCLUSION

For the reasons set forth herein, Mr. Asaro respectfully requests that the Court grant his motion in limine in its entirety.

Dated: New York, New York
September 29, 2015

Respectfully submitted,

_____/s/_____
Elizabeth E. Macedonio
Diane Ferrone
*Attorneys for Vincent Asaro*

6