```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------------x
     UNITED STATES OF AMERICA
 3                                              14 CR 26 (ARR)
              versus
 4                                              U.S. Courthouse
     VINCENT ASARO,                             225 Cadman Plaza East
 5                                              Brooklyn, NY 11201
                       Defendant.               September 10, 2015
 6   ------------------------------------x

 7         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE

 8                  BEFORE THE HONORABLE ALLYNE ROSS

 9                    UNITED STATES DISTRICT JUDGE

10                              APPEARANCES

11   For the Government:     KELLY CURRIE
                             UNITED STATES ATTORNEY
12                           EASTERN DISTRICT OF NEW YORK
                             271 Cadman Plaza East
13                           Brooklyn, New York 11201
                             BY: NICOLE ARGENTIERI, ESQ.
14                               ALYCIN COOLEY, ESQ.
                                 LINDSAY GERDES, ESQ.
15                           Assistant United States Attorneys

16

17   For the Defendant:      ELIZABETH MACEDONIO, ESQ.
                             DIANE FERRONE, ESQ.
18                           80 Broad Street
                             Suite 1900
19                           New York, New York 10004

20

21   Court Reporter:         LISA SCHMID, CCR, RMR
                             Official Court Reporter
22                           225 Cadman Plaza East
                             Brooklyn, New York 11201
23                           Phone:  718-613-2644
                             Fax:    718-613-2379
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

LISA SCHMID, CCR, RMR

```
 1              MS. MACEDONIO:  Yes.
 2              THE COURT:  Okay.
 3              MS. MACEDONIO:  If we have it earlier, we will send
 4   it in earlier.
 5              THE COURT:  Yes.  That's fine.  I guess the 21st at
 6   the latest.
 7              Okay.  And what other motions are we going to have
 8   or issues?
 9              MS. MACEDONIO:  I think in addition to the business
10   records exception with respect to the Katz homicide, the
11   government has also indicated that they were going to seek to
12   admit evidence with regard to uncharged homicides related to
13   the Lutfhansa heist, that the defendant was not implicated in.
14   They haven't formally given us details as to what they seek to
15   admit, so I would like to get some more detail on that and
16   then we'll respond to them.
17              THE COURT:  So that's another -- that was something
18   that wasn't part of these motions, but --
19              MS. MACEDONIO:  It was just a footnote.
20              MS. ARGENTIERI:  It was in the motion, but it's not
21   the defendant's bad acts.  And I had said to Ms. Macedonio
22   before this, I don't know what to extent we intend to get into
23   it.
24              But CW-1 will testify that after the Lutfhansa
25   heist, a bunch of people who participated in it were murdered,
```

1  not by the defendant.  Had nothing to do with Mr. Asaro.  And
2  it's relevant to him in a very small regard because at some
3  point, his own life was in danger and he was called to a
4  meeting with one of the participants in the heist and he
5  consulted with Mr. Asaro, who was in Florida at the time, and
6  said what should I do?  They're calling me to this meeting.
7  And he gave him advice about how to protect himself.
8              THE COURT:  Who gave who.
9              MS. ARGENTIERI:  The defendant gave CW-1 advice.
10             THE COURT:  CW-1 advice?
11             MS. ARGENTIERI:  About how to protect himself, but
12 it's not another bad act because the defendant was actually --
13             THE COURT:  He didn't do it.
14             MS. ARGENTIERI:  He didn't do it.  It wasn't his
15 idea.  He was sort of telling CW-1 how to remain safe and CW-1
16 goes to the meeting and he brings the defendant's son with him
17 as a witness to wait outside.  So he walks into the house to
18 meet with the person, you know, at some point, he mentions
19 like oh, Jerry's outside, and basically, nothing bad happens
20 to him.
21             But it's sort of like the aftermath of the Lufthansa
22 heist and what happens to all the participants and the money.
23 So that's really the only way that it would come in.  It would
24 be very limited testimony.  We're not seeking up to prove up
25 any of the murders in any other way.

```
 1              THE COURT:  Exactly what's going to be said about
 2   the murders?  What are you -- not exactly, obviously.  But
 3   what do you envision is the least you can getaway with?
 4              MS. ARGENTIERI:  So just as an example, Judge,
 5   shortly after the Lutfhansa heist, they're moving the money.
 6   They're cleaning the money.  The money is being held and
 7   they're not supposed to spend it.  The defendant is with CW-1
 8   at Robert's Lounge where everyone hung out.
 9              Tommy DeSimone comes in who's a critical part of the
10   heist.  He's part of the Richard Eaton homicide.  And he says,
11   "I'm going to get straightened out tonight.  They're going to
12   make me a captain."  And the CW goes to say something because
13   that doesn't make sense.  No one gets get straighten out and
14   made a captain the same day.  And the defendant says, "Be
15   quiet," and then Tommy DeSimone disappears and later, Jimmy
16   Burke says that he was killed.
17              Oh, I'm sorry.  Later, actually, the defendant is
18   with Jimmy Burke and CW-1 at his fence company.  Jimmy Burke
19   comes in and he's crying and he says -- he's very upset, and
20   he says, "They killed Tommy.  They killed Tommy."
21              That's not going to be offered for the truth of the
22   matter that they killed -- it's not even clear who killed
23   Tommy.  We're not going to elicit that, but the fact that that
24   happened goes to the relationship of trust between them.  It's
25   not a bad act on the part of -- so for example, it just goes
```

```
 1   to their relationship and the enterprise and him knowing his
 2   people and the existence of the conspiracy.  So that -- but
 3   that would be extent of that.
 4               MS. MACEDONIO:  That homicide?
 5               MS. ARGENTIERI:  That homicide.
 6               MS. MACEDONIO:  Right.
 7               MS. ARGENTIERI:  But that's it.
 8               MS. MACEDONIO:  If there are more.
 9               THE COURT:  Do we have to go into, you know --
10               MS. MACEDONIO:  Right.
11               THE COURT:  -- there were 12 people wiped out or
12   could we just talk about that one?
13               MS. ARGENTIERI:  We could talk about that one,
14   Judge, and then I would say also the incident where he felt
15   like his life was also in danger.  As background to that, he
16   would say that these other two people were found killed and it
17   was his understanding the guy that he had met with killed
18   them.  That's why he was so nervous about going to the
19   meeting.  But again, I don't really see how that reflects
20   poorly on the defendant, since --
21               THE COURT:  I understand.  But I can also understand
22   that we don't want to go through too much testimony about
23   extraneous murders --
24               MS. MACEDONIO:  Right.
25               THE COURT:  -- if they're not really at the heart of
```